UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE<br><br>1518 West Chicago Avenue, LLC,<br><br>　　　　Debtor. | Bankruptcy No. 09 B 05776 |
| 1518 West Chicago Avenue, LLC,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>South Melrose, LLC, and Harris Bank, N.A.,<br><br>　　　　Defendants. | Adversary No. 09 A 00542 |

## MEMORANDUM OPINION

This matter comes before the Court on the cross motions for summary judgment filed by plaintiff, 1518 West Chicago Avenue, LLC ("Debtor"), and defendant Harris N.A. ("Harris") pursuant to Federal Rule of Civil Procedure 56, applicable herein by virtue of Federal Rule of Bankruptcy Procedure 7056, on the adversary complaint filed by Debtor.

**Undisputed Facts.**

Based on the parties' submissions, the following facts are undisputed. Debtor owns mixed use real property commonly known as 1518 West Chicago Avenue, Melrose Park, Illinois (the "Property"). On December 14, 2005, Debtor executed a promissory note in favor of Harris in the

-1-

original principal amount of $1,104,522.70 (the "Note"). The Note was secured by a mortgage and by an assignment of rents. Debtor defaulted under the Note and on January 17, 2008, Harris filed a foreclosure complaint in the Circuit Court of Cook County, Illinois (the "Foreclosure Action"). An Order Granting Possession and Appointing Receiver was entered in the Foreclosure Action on February 27, 2008, and Daniel J. McKay was appointed receiver for the Property (the "Receiver"). The order provided that the Receiver was authorized to collect rents and to incur and pay expenses for maintenance and repair and other expenses necessary to the preservation and operation of the Property. The order further provided that any amount remaining after the payment of such expenses and the payment of the Receiver's compensation "shall be paid to Harris and Harris shall apply such payment to the indebtedness evidenced by the Note."

During the pendency of the Foreclosure Action, Harris paid $215,181.34 in real estate taxes for the Property. That sum is included in the $1,466,628.73 found to be due to Harris in the Amended Judgment of Foreclosure and Sale entered in the Foreclosure Action on December 30, 2008 (the "Judgment").

Several weeks after the entry of that Judgment, on or about January 26, 2009, Harris and South Melrose, LLC ("SML") executed a Letter of Intent, wherein SML agreed to purchase Harris' right, title, and interest in the Loan Documents and the Judgment. An Assignment of Loan Documents was executed on February 13, 2009, along with a Closing Statement, an Assignment of Mortgage and Other Loan Documents, and an Allonge, pursuant to which Harris transferred and assigned to SML the Mortgage, Assignment of Rents, Note, and other loan documents, as well as the Judgment.

Ten days later, on February 23, 2009, Debtor filed its chapter 11 petition in this court. On

April 21, 2009, an order was entered pursuant to the agreement of the parties, providing for turnover by the Receiver to Debtor's counsel of all proceeds from the Property, including all funds held in the Receiver's operating account, to be held pending further order of court or agreement of the parties. Pursuant to that order, the Receiver turned over to Debtor's counsel the sum of $39,599.13 (the "Receiver's Funds"), of which $6,320.00 represented security deposits for several apartment units. All of the moneys that the Receiver turned over to Debtor's counsel were collected by the Receiver prior to the assignment of the Note, Mortgage, and other loan documents to SML and represent (other than the security deposits) the net proceeds of the Receiver's maintenance and operation of the Property.

On June 30, 2009, Debtor filed the instant adversary complaint, seeking a determination of the validity, priority, and extent of Harris' and SML's liens and interests in and to the Receiver's Funds. Again, both Harris and Debtor have filed motions for summary judgment. Harris seeks a determination that it is entitled to the Receiver's Funds less the security deposits, and Debtor seeks an order finding that any interest Harris had in the funds was extinguished at the time of the assignment to SML and that the funds are cash collateral, subject to SML's lien.

## DISCUSSION

**Jurisdiction and venue.**

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 1334, and Internal Operating Procedure 15 of the United States District Court for the Northern District of Illinois. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). Venue lies in this court pursuant to 28 U.S.C. § 1409.

**Summary Judgment Standards.**

In order to prevail on a motion for summary judgment, the movant must meet the criteria set forth in Rule 56 of the Federal Rules of Civil Procedure, applicable herein by virtue of Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) reads in part as follows:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The primary purpose of the summary judgment procedure is to avoid unnecessary trials where no genuine issues of material fact are in dispute. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v. Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (*quoting Wainwright Bank & Trust Co. v. Railroadmens Fed. Savs. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Brhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

It is the moving party's burden to show that no genuine issue of material fact is in dispute. *See, e.g., Green v. Whiteco Industries, Inc.*, 17 F.3d 199, 201 (7th Cir. 1994). All reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *See, e.g., Roger Whitmore's Automotive Servs., Inc. v. Lake County, Ill.*, 424 F.3d 659, 666-67 (7th Cir. 2005). "[S]ummary judgment is not an appropriate occasion for weighing the evidence; rather, the inquiry is limited to determining if there is a genuine issue for trial." *Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990).

The "party seeking summary judgment always bears the initial responsibility of informing

the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (*quoting* Fed.R.Civ.P. 56(c)). The manner in which the moving party can make this initial showing depends upon which party will bear the burden of persuasion at trial. *See Union Nat'l Bank of Marseilles v. Leigh (In re Leigh)*, 165 B.R. 203, 213 (Bankr. N.D. Ill. 1993). If the burden of persuasion would be on the non-moving party, the summary judgment movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element of the non-moving party's claim or by showing that the non-moving party's evidence is insufficient to establish an essential element of his claim. *Id.* Once the moving party satisfies its initial burden of production, the party opposing the motion may not rest upon the mere allegations or denials in its pleadings; rather, its response must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex*, 477 U.S. at 324; *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

**Debtor's Interest in the Receiver's Funds.**

Harris contends that it "is entitled to summary judgment ... and to a determination that it is entitled to receipt of the Receiver's Funds (less the security deposits)." (Harris Supporting Memorandum, at 4). Harris notes that it "perfected and enforced" its security interest in the rents prior to the petition through the appointment of the Receiver, who collected the sums at issue here.

Harris urges that because of such prepetition perfection and enforcement, the funds are not property of Debtor's estate, but rather "the property of Harris and Harris alone." (*Id.* at 4). According to Harris, Debtor is "confusing the right to collect rents pursuant to the Assignment of Rents with the *ownership* of rents" already collected by the Receiver pursuant thereto. (Harris Response Memorandum, at 3; emphasis added).

Harris relies, *inter alia*, on *In re Century Investment Fund VIII Limited Partnership*, 937 F.2d 371 (7th Cir. 1991), in support of the proposition that the appointment of (and collection of rents by) the Receiver extinguished all ownership interest the Debtor may have had in the assigned rents. According to Harris, the Seventh Circuit in *Century Investment* "held that rents in which the mortgagor [sic] has perfected its security interest under an assignment of rents prior to the filing of the bankruptcy petition were solely the property of the mortgagee." (Harris Supporting Memorandum, at 5.) That was not, however, the "holding" of *Century Investment*. The language relied upon by Harris was contained in the introductory portion of the court's discussion, wherein it stated:

> Generally speaking, if a mortgagee has protected its security interests in a mortgagor's property and rental proceeds by perfecting its liens under the requirements of state law, then those interests do not later become property of the bankruptcy estate.

*Century Investment*, 937 F.2d at 375. Not only is this statement dictum; if interpreted as urged by Harris, it is directly contrary to the result reached in the case. In *Century*, First Bank held a mortgage on an apartment complex owned by the debtor in Wisconsin, together with an assignment of leases and rents. Both the mortgage and the assignment of rents were properly recorded. After default, the bank filed a foreclosure action and a motion for the appointment of a receiver. The day before the

-6-

hearing on that motion, the debtor filed its chapter 11 petition.

In the bankruptcy case, the bank filed, *inter alia*, a motion for relief from the automatic stay or for adequate protection, as well as a motion for a determination that its security interest in the rents was "perfected" under state law. This determination was important to the bank because of the impact and interplay of §§552 and 363 of the Bankruptcy Code. Under §552, as then in effect, a lender's prepetition security interest in rents would extend to rents acquired by the estate after the petition only "to the extent provided by the security agreement *and by applicable nonbankruptcy law*." (Emphasis added). If the security interest extended to the postpetition rents, the rents would then constitute "cash collateral," which under §363 can only be used with the lender's consent or after entry of a court order authorizing such use (e.g., after a finding that the lender's interest is adequately protected).[1] In applying these provisions, many courts analyzed whether the lender had, prior to the bankruptcy petition, "perfected" its security interest in rents - - "perfected" being used by such courts in the sense that the lender had taken all the steps required by state law to "activate" or "enforce" its right to the rents.[2] These courts often held that the security interest extended to postpetition rents only if it was so "perfected" (i.e., activated or enforced - - made choate) at the time of the petition. *See, e.g., In re Bond*, 122 B.R. 39, 40 (D.Md. 1990); *In re Association Center Limited Partnership*, 87 B.R. 142, 144-145 (Bankr. W.D.Wash. 1988). Other courts distinguished,

---

[1] Section 363, which constitutes an exception to the operation of §552(b), provides, *inter alia*, special protections for "cash collateral," i.e., collateral consisting of cash, negotiable instruments, deposit accounts, and other cash equivalents.
   Another one of the exceptions to the operation of §552(b) is §544, which authorizes the trustee (or chapter 11 debtor in possession) to avoid, *inter alia*, security interests that are unperfected as of the date of the petition. *See also* n. 3, *infra*.

[2] In many states, even though a mortgage and assignment of rents have been duly recorded of record, additional action is required of the mortgagee (upon the mortgagor's default) to activate or enforce the right to rents, e.g., the taking of possession of the premises or the appointment of a receiver.

however, between the activation or enforcement of a security interest in rents, on the one hand, and the creation or existence of the security interest (and its "perfection" in the more traditional sense of notice to third parties), on the other. Such courts held that a lender holds a "security interest" within the purview of §552(b) even though he may not have taken, prior to the bankruptcy petition, all the steps necessary under state law to activate or enforce that interest against the debtor. *See, e.g., In re Wheaton Oaks Office Partners Limited Partnership*, 27 F.3d 1234, 1242-44 (7th Cir. 1994); *In re Vienna Park Properties*, 976 F.2d 106 (2d Cir. 1992).[3] Because of the varying results reached by the courts as a result, *inter alia*, of the differences in state law, Congress amended § 552(b) and made it clear that a lender may have a valid security interest in postpetition rents for bankruptcy purposes "notwithstanding [its] failure to have fully perfected [its] security interest under applicable State law." 140 Cong. Rec. H10752-01, H10768.[4]

---

[3] In *Wheaton Oaks*, the Seventh Circuit held that "under Illinois law, an executed, yet unenforced assignment of rents still creates a lien in rents ... ." *Wheaton Oaks*, 27 F.3d at 1243 n. 6. The Court, noting that §544 constitutes an exception to the postpetition viability of a security interest in rents under §552(b), also examined the requirements for perfection of the lien as against third parties. The Court held that under Illinois law, the lien is perfected as against third parties when it is recorded in the county where the property is located. Accordingly, the Court concluded that "under Illinois law, the failure to enforce an assignment of rents does not destroy the legal existence of an effective, enforceable security interest in those rents which came into being upon execution and was perfected upon recordation. And that is enough, under §§ 552(b) and 544, to ensure that a pre-petition security interest in rents will carry on after bankruptcy, thus qualifying such rents as cash collateral under § 363(a)." *Id.* at 1245. *See also In re Cadwell's Corners Partnership*, 174 B.R. 744 (Bankr. N.D.Ill. 1994), where the court noted that "the unique nature of an assignment of rents ... may have led some courts to misuse the word 'perfect,' when they were actually referring to enforcement of the right to collect rents." *Id.* at 753, n. 9. The court noted that in Illinois, an assignment of rents is perfected through recording, but additional steps are required before the mortgagee may begin to collect rents, i.e., to enforce the assignment. The court noted that "the issue of perfection becomes critical when addressing the priority of competing liens and the 'strong arm' powers of a trustee or debtor in possession under section 544 ... ." *Id. See also* John Rapisardi and Elliot Hurwitz, "The Mortgagee's Right to Rents After Default: An Unsettled Controversy?", 6 J.Bankr.L&Prac. 331, 344 (1997).

[4] The legislative history to the amendment states:

Under current section 552 of the Bankruptcy Code, real estate lenders are deemed to have a security interest in postpetition rents only to the extent their security interest has been "perfected" under applicable State law procedures, Butner v. United States, 440 U.S. 48 (1979). Inclusion under section 552, in turn, allows such proceeds to be treated as "cash collateral" under section 363(a) of the Bank-

*Century Investment* was decided prior to the 1994 amendment, and the issue -- as described by the Seventh Circuit -- was whether the bank had "perfected" its security interest in the rents prior to the bankruptcy petition. The bankruptcy court had held that the bank's prepetition filing of a foreclosure action and request for the appointment of a receiver had "perfected" the mortgagee's right to the rents. The bankruptcy court relied largely on *First Wisconsin Trust Co. v. Adams*, 218 Wis. 406, 261 N.W. 16 (1935), a Wisconsin Supreme Court decision holding that the commencement of foreclosure proceedings and request for receiver's appointment may be sufficient, in certain circumstances, to activate the mortgagee's right to rents. *In re Century Investment Fund VIII Limited Partnership*, 155 B.R. 1002, 1006 (Bankr. E.D.Wis. 1989). After concluding that the bank's right to rents was "perfected," the bankruptcy court nonetheless allowed the debtor to continue to use the rents as "cash collateral," subject to the bank's perfected security interest, on the condition that amounts remaining after payment of necessary expenses and agreed improvements would be paid to the bank for application to the debt. In addition, the funds that had been accumulated by the debtor would also be paid to the bank, less a reserve of $15,000 for current

---

> ruptcy Code, which prohibits a trustee or debtor-in-possession from using such proceeds without the consent of the lender or authorization by the court. In a number of States, however, it is not feasible for real estate lenders to perfect their security interest prior to a bankruptcy filing; and, as a result, courts have denied lenders having interests in postpetition rents the protection offered under sections 552 and 363 of the Bankruptcy Code. See, e.g., In re Multi-Group III Ltd. Partnership, 99 B.R. 5 (Bankr. D. Ariz. 1989); In re Association Center Ltd. Partnership, 87 B.R. 142 (Bankr. W.D. Wash. 1988); In re TM Carlton House Partners, Ltd., 91 B.R. 349 (Bankr. E.D. Pa. 1988); In re Metro Square, 93 B.R. 990 (Bankr. D. Minn. 1988). [Amended §552] provides that lenders may have valid security interests in postpetition rents for bankruptcy purposes notwithstanding their failure to have fully perfected their security interest under applicable State law.

140 Cong. Rec. H10752-01, H10768. The change was accomplished with respect to postpetition rents by, *inter alia*, deleting the reference to "applicable nonbankruptcy law."

expenses, which the debtor would retain, subject to the bank's security interest. *Id.* at 1008.

The district court reversed, holding that under later Wisconsin Supreme Court cases, the filing of a foreclosure action and motion for a receiver "perfects" a security interest in rents only when those events are specifically set forth in the mortgage agreement as the events transferring the right to rents to the mortgagee and that such events were not so designated in the *Century* mortgage documents. *See Century Investment*, 937 F.2d at 375. On appeal to the Seventh Circuit, the Court reversed the district court's decision and remanded with instructions to reinstate the bankruptcy court's ruling. The Court stated that it agreed with the bankruptcy court's careful analysis of the contractual provisions and the application of Wisconsin law and held that the bank's filing of the foreclosure action and request for a receiver had "perfected its security interest in the rents," i.e., had "activate[d] the Bank's right to the rents." *Id* at 378, 380.[5]

The Seventh Circuit, by holding that the rents were subject to the bank's security interest, and by reinstating the bankruptcy court's decision allowing the debtor to continue to conditionally use the rents as "cash collateral," clearly held that the rents in fact constituted property of the debtor's

---

[5] The Seventh Circuit noted that in *Lincoln Crest Realty v. Standard Apt. Development*, 61 Wis.2d 4, 211 N.W.2d 501 (1973), the Wisconsin Supreme Court recognized the general rule in Wisconsin that a mortgagee does not have the right to rents until he obtains actual or constructive possession of the property or the appointment of a receiver. As explained by the Seventh Circuit, however, *Lincoln Crest* made clear that there is an exception to that rule, "which grew out of *Adams* and its progeny," to the effect that the mortgagee may gain the right to rents even without taking possession if the mortgage documents specify an event that will give the mortgagee the right to rents and the mortgagee takes the specified action. *Century Investment*, 937 F.2d at 376, 378. The Seventh Circuit, finding support in the Century mortgage documents, held that "under Wisconsin law, as defined in *Adams* and *Lincoln Crest*," the bank's security interest in the rents from Century's property was "perfected" upon commencement of the foreclosure action and petition for a receiver. *Id.* at 378-79.

The court notes that *Century Investment* was decided prior to the *Wheaton Oaks* decision, *see* n. 3, *supra*, which held that under Illinois law, the mortgagee's lien is perfected as against third parties when it is recorded in the county where the property is located and that the failure to take the steps necessary to enforce or activate the assignment does not vitiate its existence as an effective, enforceable security interest in rents within the purview of §552, entitling the mortgagee to the protections afforded with respect to "cash collateral" under §363.

estate.[6] Accordingly, Harris' reliance on the dictum quoted above - - concerning the purported exclusion of rents from property of the estate where the mortgagee has "perfected" its security interest under the requirements of state law - - is misplaced.

The court in *In re Cadwell's Corners Partnership*, 174 B.R. 744 (Bankr. N.D.Ill. 1994), took a similar view of the dictum in *Century Investment*. Judge Katz noted that the sole issue on appeal before the district and appellate courts in *Century* was whether the mortgagee's interest was "perfected," such that the rents would constitute "cash collateral," thereby entitling the mortgagee to adequate protection under § 363. He stated that "the Seventh Circuit in *Century* affirmed the bankruptcy court's ruling that the postpetition rents were cash collateral and the mortgagee only held a secured interest in those rents." *Cadwell's Corners*, 174 B.R. at 757. According to Judge Katz, it was "clear that the introductory statement [concerning the exclusion of rents from property of the estate where the mortgagee has "perfected" its security interest under state law] is *dicta*." *Id.* He suggested that the language was "only understandable if the court meant to refer to the debtor's *unfettered* use of the mortgagee's security without protecting that interest." *Id.* (emphasis added). "At no time did the Seventh Circuit in *Century* enter a direct holding that there was a transfer of title so that the assigned rents were no longer property of the estate." *Id.*

In *Cadwell's Corners*, the debtor owned a strip shopping center subject to a mortgage and assignment of rents held by Massachusetts Mutual Life Insurance Company ("Mass Mutual"). Prior to the debtor's chapter 11 petition, Mass Mutual filed a foreclosure action and obtained the

---

[6] Section 363(a) defines "cash collateral" as cash and cash equivalents "in which the estate and an entity other than the estate have an interest ..." In order to constitute "cash collateral," therefore, the cash or cash equivalents must necessarily be property of the estate under §541, i.e., property "in which the estate ... ha[s] an interest."

appointment of a receiver, who collected rents from the property. In the bankruptcy case, the debtor sought a turnover of the property under § 543 of the Bankruptcy Code,[7] as well as an accounting of rents and profits and for authority to use cash collateral. Mass Mutual responded, *inter alia*, that the rents were not property of the estate. According to Mass Mutual, the "perfection" of its interest in the rents through the prepetition appointment of the receiver prevented the rents from becoming estate property. *Id.* at 749.

The bankruptcy court concluded otherwise, noting first that in Illinois, a "lien theory" state, even a judgment of foreclosure does not cause title to pass to the mortgagee, but only creates a lien in the mortgagee's favor. *Id.* at 751. The court further noted that under Illinois law, while a mortgagee holding a lien on rents has the right to collect the rents upon default, he must first obtain possession of the property, which is generally done during a foreclosure proceeding by being placed in actual possession or by obtaining the appointment of a receiver (as long as that remedy is authorized by the mortgage). *Id.* at 752-753. In *Cadwells Corners*, Mass Mutual had not only recorded its assignment of rents, but had obtained the appointment of a receiver. There was no question, therefore, that Mass Mutual had "perfected and enforced" its security interest in rents prior to the filing of the debtor's chapter 11 petition. *Id.* at 753-754. Again, however, Mass Mutual contended that the prepetition appointment of the receiver not only perfected and enforced the lien on rents but also divested the debtor of any and all ownership rights in the assigned rents, so that the debtor had no right to use them as "cash collateral." *Id.* at 754.

---

[7] Section 543 provides, *inter alia*, that a "custodian" must deliver to the trustee (or chapter 11 debtor in possession) any property of the debtor, or the rents and profits thereof, and file an accounting of same with the court. "Custodian" is defined in §101(11) of the Bankruptcy Code to include a receiver appointed in a state court proceeding.

In holding that the Debtor retained ownership rights in the rents, subject to Mass Mutual's security interest, the court explained:

> As with title to mortgaged real property, legal title to rents remains with the mortgagor and is not conveyed to the mortgagee upon assignment. ... Furthermore, a receiver who is appointed in foreclosure proceedings and who is authorized to collect rents does not acquire title to the rents. ... Rather the receiver's duty is to sequester the rents on behalf of the mortgagee to be used in accordance with order of the court (e.g., applied against the debt or to pay expenses or to satisfy a deficiency arising from a foreclosure sale). ... Any rents remaining in the hands of the receiver are property of the mortgagor. ... Rents collected by the receiver, therefore, remain property of the mortgagor.
>
> Under Illinois law, the appointment of a receiver does nothing more than place the rents in the custody of the court until the rights of the parties have been determined. ... The appointment of a receiver merely denies the mortgagor-assignor the use of the rents pendente lite. But, the debtor's ownership rights in the property, and in the rents stemming therefrom, are not altered by the appointment of a receiver.

*Id.* (footnotes and citations omitted). Accordingly, the court in *Cadwell's Corners* held that the debtor retained ownership rights in the rents notwithstanding the prepetition "perfection and enforcement" of the mortgagee's security interest through the appointment of a receiver, and such rents therefore became property of the estate and constituted "cash collateral" within the purview of § 363. *Id.*[8]

The fact that *Cadwell's Corners* was decided under the pre-amendment version of §552(b) does not affect the relevance and vitality of its analysis with respect to the issue to be decided here, i.e., whether the appointment of (and collection of rents by) a receiver extinguishes all ownership interest of the mortgagor in the rents collected. This court agrees with the analysis of *Cadwell's*

---

[8] The court nonetheless went on to grant stay relief to the mortgagee because, *inter alia*, the debtor had failed to demonstrate any realistic prospect of an effective reorganization. *Id.* at 761.

*Corners* and holds that under Illinois law, Debtor retained an ownership interest in the rents assigned to Harris notwithstanding the appointment of the Receiver.[9] Accordingly, at the time of the assignment to SML, Debtor held an ownership interest in the Receiver's Funds, and Harris held a "perfected and enforced" security interest (not absolute ownership) therein.

### The Effect of the "Assignment of Loan Documents".

Debtor, in its complaint, asserts that "the Receiver's Funds are Cash Collateral," subject to SML's security interest. (Complaint, ¶ 15). According to Debtor, Harris' interest in the Receiver's Funds was transferred to SML as part of the assignment of the Loan Documents and Judgment on February 13, 2009. Harris, however, contends that the Receiver's Funds were excluded from that transfer.

The Assignment of Loan Documents provides that "in consideration of the payment by [SML] to [Harris] of the sum of ... $900,000 less agreed upon prorations (the "Purchase Price"), and for other good and valuable consideration," Harris assigns and transfers to SML "all of [Harris']

---

[9] The court also agrees with the comments made in *Cadwell's Corners* concerning the decision of the district court in *In re VIII South Michigan Associates*, 145 B.R. 912 (N.D.Ill. 1992), another case cited by Harris. As noted by Judge Katz, the *VIII South Michigan* opinion "relied solely on the *dicta* from *Century* to hold that rents subject to an assignment which a mortgagee has duly perfected prior to the filing of the mortgagor's bankruptcy petition are the exclusive property of the mortgagee and not cash collateral." *Cadwell's Corners*, 174 B.R. at 757. Judge Katz "respectfully reject[ed] the district court's interpretation of the *Century* opinion." *Id.* at 758. This court agrees that the holding of *VIII South Michigan*, which is based on the dictum from the *Century* opinion, is directly in conflict with the actual result reached in *Century*, i.e., reinstatement of the bankruptcy court's ruling that the rents constituted cash collateral (and were therefore property of the estate). The court notes that in *VIII South Michigan*, the mortgagee's appeal to the district court was unopposed, as the case was converted to chapter 7 while the appeal was pending, and neither the Debtor nor the chapter 7 trustee filed an appellate brief. *VIII South Michigan*, 145 B.R. at 914.

right, title, and interest in, to and under the Loan Documents and the Judgment."[10] This language would appear to cover all rights that Harris may have had by virtue of the Loan Documents and the Judgment, including Harris' interest in the rents in the Receiver's account. Harris, however, submits the Affidavit of Eric Williams, in which Williams avers that the Receiver's Funds were excluded from the assignment to SML.

First, it is not entirely clear under Illinois law that the Williams affidavit should be considered in construing the assignment. *See Kaplan v. Shure Bros., Inc.*, 266 F.3d 598, 604 (7th Cir. 2001). In *Kaplan*, the Seventh Circuit stated it was "not entirely clear" whether, in construing the assignment at issue (of the beneficial interest in a land trust), it would be proper under Illinois law to consider an affidavit and estoppel certificate submitted by one of the parties. *Id.* The Court stated that it "ha[d] previously held (while applying Illinois law) that assignments are to be interpreted just like any other contract ... ." *Id.* The Court noted that in construing contracts, the court's primary objective is to give effect to the intent of the parties at the time of contracting; but if the language of the contract is unambiguous, the intent must be gleaned solely from the contract language as a matter of law. *Id.* Finding no ambiguity in the language of the assignment at issue, the Court nonetheless went on to explain:

> Ordinarily, such a conclusion would end the matter, and would preclude us from considering any extrinsic evidence in a further effort to construe the contract. However, Illinois courts have at times departed from this rigid rule and have more liberally availed themselves of extrinsic evidence when construing assignments, as opposed to other types of contracts.

---

[10] The term "Loan Documents" is defined in the assignment as the "Note and Mortgage, and various other related documents pertaining to collateral for the Note as amended ... from time to time." As such, the term "Loan Documents" includes the Assignment of Rents.

> *See Service Adjustment Co., Inc. v. Underwriters at Lloyd's London*, 205
> Ill.App.3d 329, 334, 150 Ill.Dec. 243, 562 N.E.2d 1046, 1049 (1990) (ruling
> that "[t]he creation and existence of an assignment is determined according
> to the intention of the parties and that intention is a question of fact derived
> from the instruments executed as well as the surrounding circumstances")
> .... Also, Illinois courts have held that the parol evidence rule only applies
> to the parties to the written agreement, and that "... parol evidence can be
> used to vary or contradict a contract when the litigation is between a party
> to the contract and a stranger thereto ... even where the evidence is offered
> by the party to the contract."

*Kaplan*, 266 F.3d at 605-606.[11]

The foregoing suggests that this court may consider the Williams affidavit. However, Williams' statement therein that the Receiver's Funds were excluded from the transfer to SML is a conclusory assertion of an ultimate fact which, contrary to Harris' contention, does not of itself require summary judgment in its favor or denial of Debtor's summary judgment motion.[12] While Harris points to nothing specific in the record in support of Williams' averment, the court notes that the Closing Statement for the assignment transaction, as well as the letter of intent executed by Harris and SML with respect thereto (both of which are included among the exhibits submitted by Debtor), may provide some support for Williams' averment. As indicated above, the Assignment of Loan Documents provides a purchase price of $900,000 "less agreed upon prorations." In the

---

[11] Further noting that the defendant was a stranger to the assignment at issue and that in a previous panel opinion in the case, the Court had tacitly assumed that the plaintiff could rely on extrinsic evidence to prove his claim, the Court decided to consider the extrinsic evidence offered by the plaintiff despite the absence of an ambiguity in the assignment. *Kaplan*, 266 F.3d at 606. Consideration of such evidence did not, however, alter the Court's conclusion regarding the scope of the assignment, and the Court granted summary judgment in favor of the defendant. *Id.*

[12] The Seventh Circuit has admonished that while the self-serving nature of an affidavit "does not permit a ... judge to denigrate a [party's] evidence when deciding whether a material dispute requires trial," *Kaba v. E.A. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006) (internal quotations omitted), affidavits that contain only conclusory assertions of ultimate fact are entitled to little weight on a motion for summary judgment. *See Askew v. Bloemker*, 548 F.2d 673, 679-680 (7th Cir. 1976).

letter of intent, the parties included among the prorations (by handwritten insert) "February rent collections." And in the Closing Statement, among the "Credit[s] Purchaser" listed as deductions from the $900,000 "Note Purchase Price" is the sum of $7,020.00, representing that portion of the February rents already collected (and presumably included among the Receiver's Funds) that were allocable to the period after the effective date of the assignment (i.e., February 13, 2009), as well as all of the March rent already collected from one of the tenants. The fact that SML was receiving a "credit" for these sums suggests that the parties to the assignment may have intended that Harris retain them. While these exhibits do not establish the parties' intention, they are sufficient, in combination with the Williams averment (and drawing - - with respect to Debtor's motion for summary judgment - - all reasonable inferences in favor of Harris), to raise a genuine issue of material fact in dispute regarding the intended disposition of the Receiver's Funds.

The court is mindful of Debtor's contention that Harris could not retain the Receiver's Funds without applying them to the Debtor's obligations under the Loan Documents and the Judgment and that because of the assignment of the debt to SML, "Harris lacks any interest to secure." (Debtor's Response Memorandum, at 3). There is, however, by virtue of the exhibits just described, a genuine issue of material fact as to whether it was the intention of the parties to the assignment that SML was purchasing the Judgment and Loan Documents subject to a credit in favor of Debtor for all or a portion of the Receiver's Funds.

**Conclusion.**

With respect to Harris' motion for summary judgment, Harris has failed to meet its burden of showing that no genuine issue of material fact is in dispute and that it is entitled to judgment as a matter of law. Accordingly, Harris' motion for summary judgment will be denied. With respect to Debtor's motion for summary judgment, the record demonstrates that there is a genuine issue of material fact in dispute, and Debtor's motion will therefore also be denied. Separate orders will be entered concurrent herewith.

Dated: 4-16-2010

ENTER:

*/s/ Susan Pierson Sonderby*
Susan Pierson Sonderby
United States Bankruptcy Judge